Theodore J. Piteo, OSB #090311
Michael D. O'Brien & Associates, P.C.
12909 SW 68th Pkwy, Suite 160
Portland, OR 97223
(503) 786-3800
Ted@pdxlegal.com

Of Attorneys for Kemp Strickland, Plaintiff.


IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| Kemp Strickland,<br>              Plaintiff,<br><br>        vs.<br><br>Fay Servicing, LLC et. al.,<br><br>              Defendant(s). | Case No. 3:19-cv- 01327-AC<br><br>PLAINTIFF MOTION FOR<br>SUMMARY JUDGMENT<br><br><br>REQUEST FOR HEARING |


Now comes Plaintiff, Kemp Strickland, by and through his attorney, Theodore J.

Piteo, and says the following in support of his Motion for Summary Judgment as

supported by the concurrently filed declarations of Kemp Strickland and Theodore Piteo

and associated exhibits.

## I.  Introduction

Plaintiff brought this action against the Defendants, Fay Servicing, LLC and

Wilmington Trust, N.A., seeking declaratory and monetary relief for their violations of

various statutes and contractual agreements. Plaintiff now asserts that he should be entitled to a finding of liability as to all of his claims as a matter of law, leaving only the determination of damages for a jury. In his motion, Plaintiff demonstrates how Defendants failed to act in good faith in relation to the servicing of his home mortgage and the implementation of a loan modification that was approved by the parties and resolved by Court action. Further, Plaintiff will demonstrate how Defendants rejected his loan modification payments, sent collection documents and mortgage statements containing false information, and increased the principal balance to his home loan, in breach of the prior settlement agreement, absolving Plaintiff of his ongoing contractual obligations under the loan modification. All of these items are provable by the facts presented below by a preponderance of the evidence and as a matter of law. Therefore, Plaintiff requests that the Court find Defendants liable on all counts. Further, because of Defendants' breaches, the Court should find Plaintiff was absolved of his ongoing duties under the loan modification. Finally, the Court should find the only issues remaining involve the amount of damages a jury should determine that Plaintiff is entitled to receive.

## II. Summary of Facts

Plaintiff purchased his residence located at 14301 SE Viola Vineyard Dr. Happy Valley OR 97086, (the Residence") by borrowing money and granting a security interest in his Residence (the "Mortgage Loan"). Strickland Dec Para. 2. The Mortgage Loan is currently held by Wilmington Trust, N.A. as Trustee for the MFRA Trust 2014-2. Plaintiff and his ex-wife subsequently fell behind on the Mortgage Loan in 2015 due to a divorce. Strickland Dec Para. 2-3. As part of the divorce proceedings and as ordered by

the state court, Plaintiff's ex-wife deeded the residence to him. Strickland Dec Para. 2.

Thereafter, in the fall of 2016, Wells Fargo Bank approved Plaintiff's application for a

Mortgage Loan modification. Strickland Dec Para. 3. In February 2017, Wells Fargo

Bank transferred the servicing of the Mortgage Loan to Fay Servicing, LLC during a trial

loan modification period and while it was in default. Strickland Dec Para. 4. Thereafter,

after Plaintiff fulfilled his obligations, Fay Servicing LLC refused to honor the loan

modification agreement. Strickland Dec Para. 4-8. In 2018, Plaintiff sued Fay Servicing

and Wilmington Trust regarding their alleged failure to implement a HARP loan

modification in Oregon District Court Case Number 18-cv-00882-AC. Strickland Dec.

Para. 9.   As a result of the litigation, Plaintiff entered into a confidential settlement

agreement with the described parties in February 2019 to resolve the dispute (the

"Settlement") and as a result, the lawsuit was dismissed in March 2019. Strickland Dec

Para. 10.   A copy of the Settlement was filed under seal with the Court on January 30,

2020.

The Settlement contained a loan modification agreement which revised the principal

balance and repayment terms of the Mortgage Loan that were to begin on February 1,

2019 (the "Modification"). Strickland Dec Para. 11.  The Modification was signed by all

the parties on or before March 5, 2019. Strickland Dec Para. 11. Plaintiff timely made

two monthly payments under the Modification by check. Strickland Dec Para. 12-13.

Defendants accepted Plaintiff's first two payments under the Modification for February

and March 2019. Strickland Dec Para. 12-13. In that same time frame, Plaintiff's Counsel

authorized Defendant's direct communication with Plaintiff. See Piteo Dec Para. 4.

Defendants withdrew Plaintiff's funds for the February and March Modification

payments from his bank account before March 15, 2019. Strickland Dec Para. 13.   On

March 11, 2019, Defendants sent Plaintiff a monthly statement that indicated he was in

foreclosure and failed to reflect the Modification terms. Strickland Dec Para. 14.

Plaintiff attempted to make his third payment under the Modification by phone on

April 8, 2019, but Fay Servicing's agent refused to process his payment and told him he

was in litigation/foreclosure. Piteo Dec Para. 5 & Strickland Dec Para 15.  Plaintiff

subsequently mailed his third Modification payment to Defendant Fay Servicing.

Strickland Dec Para 15. On April 18, 2020, Plaintiff called Defendant Fay Servicing after

submitting the third payment and tried to ascertain the status of his account. Strickland

Dec Para. 16.  He was again told he was in foreclosure, despite his protestations about the

recently approved and signed settlement agreement by the parties. Strickland Dec Para.

16.

Shortly after the April 18, 2020 phone call, Plaintiff received two letters from

Defendant, dated April 10, 2020 and April 16, 2020. Strickland Dec. Para. 17 & 18. The

April 10, 2019 statement indicated Plaintiff owed $193,643 immediately (which is

inconsistent with the settlement agreement terms), indicated he was in foreclosure, and

listed an incorrect principal balance among other incorrect and misleading items.

Strickland Dec. Para. 17. The April 16th letter returned Plaintiff's third payment under the

Settlement and Modification, advised him that he was in foreclosure, and did not

acknowledge or reference the Settlement or the Modification. Strickland Dec Para. 18.  In

May 2019, Plaintiff, through Counsel, reached out to Defendants' former attorney, Tony

Kullen, to advise him regarding the rejection of the Settlement and the Mortgage Loan

and/or Modification because no one internally with Defendants would listen to him. Strickland Dec Para. 19.

On May 18, 2019, Defendants assert that the Modification was properly implemented. Ex. 1 Pg. 17 Ln 15-17. On May 24, 2020, Defendants performed an escrow analysis on the Mortgage Loan, but did not count and include in their analysis Plaintiff's first two Modification payments - which they had already received. Piteo Dec Para.  6. The failure caused Defendants to assess Plaintiff a monthly escrow shortage amount, to which it was not entitled. Piteo Dec Para.  6 & Strickland Dec Para. 22. Plaintiff never received a copy of this Escrow Analysis. Strickland Dec Para. 22.  Further, because Defendant failed to timely acknowledge Plaintiff's Modification payments, it recorded his second payment under the Modification as a "short payment." Piteo Dec Para. 7 & Strickland Dec Para. 22. Plaintiff also received another monthly statement in late May, dated May 10, 2019, that still do not reflect the Modification. Strickland Dec Para. 23.

Defendant's next statement to Plaintiff, dated June 10, 2019, indicated that Plaintiff was now three months delinquent on payments, listed a deferred principal balance of $65,999, and asserted foreclosure/bankruptcy expenses against Plaintiff in the amount of $1,376. Strickland Dec Para. 24. Plaintiff received another notice directly from Defendants dated June 18, 2019 that purported to assess additional charges for the above missed payments. Strickland Dec Para. 25.   The notice also indicated it was a collection attempt from a debt collector and asserted that negative credit reporting may be assessed against him. Strickland Dec Para. 25.  On June 24, 2019, in violation of the confidentiality clause in the Settlement Agreement, Defendants' agents disclosed the

nature and terms of the Settlement to a non-party, Plaintiff's ex-wife, through a recorded telephone conference. Strickland Dec Para. 26.

Starting with the Mortgage Loan statement Dated June 10, 2019 and appearing on each monthly statement thereafter through September 10, 2020, Defendants asserted that Plaintiff owed a deferred principal balance in the amount of $65,999.22. Strickland Dec Para. 27. Defendants admitted in October 2020, that this amount was erroneously included on monthly statements and that Plaintiff did not owe $65,999 in deferred principal balance as they had previously asserted. Ex 1 Pg. 39 Ln. 9-22. Further, the erroneous inclusion of $65,000 on monthly statements had a real and meaningful impact on the loan in that it would require Plaintiff to pay, in addition his correct principal balance, an additional amount from any sale, and/or refinancing of his home. Strickland Dec Para. 21.  Prior to their admission, Defendants asserted that the Mortgage Loan was fully compliant with the Modification starting in June 2019 and culminating with Defendant agent's August 9, 2019 email that asserted no further problems existed on the Mortgage Loan. Piteo Dec Para. 3. Plaintiff filed this suit on August 21, 2019.

On December 3, 2019, Plaintiff pointed out and disputed the improper $65,999 deferred balance in his First Request for Admissions to Defendant at Request No. 27. See Strickland Dec Para. 27.  On January 27, 2020, Defendant Fay Servicing, in response to Request No. 27's assertion that the amount was improper, stated that it "can neither admit nor deny at this time; Investigation is ongoing." However, when Fay Servicing's 30(b)(6) deponent was asked about the status of its investigation in October 2020, he admitted "I do not know…any investigation" and that Plaintiff "does not owe $65,000 in deferred amount."  Ex 1 Pg. 130-131. From the date of filing of the suit through September 2020,

Defendants continued to send incorrect monthly mortgage statements directly to the

Plaintiff at his Residence. Strickland Dec Para. 27 & 28.

Defendants' 30(b)(6) designee admitted that they do not have any facts or know any

circumstances that would give rise to their defenses of 1) Statute of Limitations, 2)

Waiver, Estoppel or Laches, 3) Acquiescence or Ratification, or 4) Unclean Hands. Ex 1

Pg. 114-117. Defendants' 30(b)(6) agent also admitted that they failed to follow their

own internal policy in onboarding the Modification. Ex 1 Pg. 21-24.

### III. The Law

Summary Judgment is appropriate when the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). See Also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). The evidence must be viewed in the light most favorable to the nonmoving party.

*In re Caneva*, 550 F.3d 755, 760 (9th Cir 2008). The movant bears the preliminary burden

to demonstrate absence of any genuine material fact and that the movant is entitled to

judgment as a matter of law. *Id* at 761. Once the moving party meets its burden, the

nonmoving party bears the burden of persuasion to show that there is a material factual

dispute remaining for trial. *Id.*

A mortgage servicer is considered a debt collector under the Fair Debt Collection

Practices Act when it takes over servicing of a mortgage loan when the loan is in default.

15 U.S.C. § 1692a. A debt collector violates the FDCPA when it misrepresents the

character, amount, or legal status of a consumer debt in a communication to a debtor,

threatens to take legal action to which it is not entitled or intending to take, or uses false

or deceptive means in attempting to collect a debt. 15 U.S.C. § 1692e. A debt collector

violates the FDCPA when it asserts it is owned money that it is not entitled to. *Id*. A collector need not intentionally or willfully misrepresent an amount due for it to be liable under 1692e; the statute is more akin to a strict liability statute. *Clark v. Capital Credit & Collection Srvcs, Inc.*, 460 F.3d 1162, 1175 (9th Cir 2006).

A party materially beaches a contractual agreement when they take actions or omissions that contravene their duties under that contract that are "so substantial and important as in truth and in fairness to defeat the essential purpose of the parties." *Weaver v. Williams*, 211 Or 668, 676–677 (1957). Every contract contains an implied warranty of good faith and fair dealing between the parties. *See Uptown Heights Associates v. Seafirst Corp*., 320 Or 638, 645 (1995). Oregon courts consider whether an action was taken in good faith by looking at a party's conduct in light of the objectively reasonable expectations of the parties. *See Swenson v. Legacy Health System*, 169 Or App 546, 554–555, 9 P3d 145 (2000). Generally, material terms of a loan contract are the identity of the parties, the amount of the loan, and the terms for repayment. *Peterson Development Co. v. Torrey Pines Bank*, 233 Cal. App.3d 103, 115 (1991).

The Unlawful Trade Practices Act (UTPA) prevents individuals from willfully misleading others in relation to a transaction regarding consumer debt. ORS 646.608. The UTPA not only regulates certain behaviors listed in the statue, but also regulates other misleading activities covered by an Oregon Administrative Rule (OAR). *Id*. OAR 137-020-0805 regulates the servicing of mortgages and the administration of the loan modification process in relation to mortgages and requires that the loan servicer act in good faith, not misrepresent loan modification information, and not attempt to collect fees to which it is not entitled. *Id.* Mortgage servicers may be liable under the UTPA and

OARs for bad faith actions, even if the mortgage loan was originated prior to 2010. *Collis v. Rushmore Loan Mgmt. Srvcs., LLC*, No. 6:17-cv-02062-MK *3 (D. Or. Feb. 7, 2019).

To establish a defense of bona fide error under the FDCPA, the debt collector must establish, by the preponderance of the evidence, that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). The creditor asserting the bona fide error defense bears the burden of proof. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008). The Ninth Circuit uses a two-step process to determine whether the "procedures" prong may have been satisfied: First the debt collector must " '[maintain]—i.e., actually [employ] or [implement]—procedures to avoid errors'" and the procedures must be "'reasonably adapted' to avoid the specific error at issue." *Id* at 1006. Defendant's asserting this defense "must … explain how a procedure or policy is tailored to avoid the specific mistake at issue to take advantage of the bona fide error defense." *Gibson v. U.S. Collections West, Inc.*, CV-16-00166-PHX-GMS *4 (D. Ariz. 2017).

## IV.  Legal Analysis

### A.  Defendant Fay Servicing is a Debt Collector that made false statements concerning the collection of a consumer debt

Defendant Fay Servicing obtained servicing rights on the Mortgage Loan after it was already in default. Defendant Fay Servicing regularly collects debts alleged to be due another and admits on its correspondence to Plaintiff that it is a debt collector. Plaintiff's Mortgage Loan was incurred for a consumer purchase, namely, to retain his residence. Defendant's monthly statements to Plaintiff, starting in March 2019 and continuing

through September 2020, were false and inaccurate. They contained several different

incorrect and erroneous principal balances due on the Mortgage Loan, listed incorrect

payment amounts, incorrectly indicated the legal status of the loan as an active

foreclosure, incorrectly asserted improper fees and charges, and purported to reflect

improper mortgage repayment terms and deferred amounts. Fay Servicing's agents also

verbally misrepresented the legal status of Plaintiff's Mortgage Loan, as an active

foreclosure, on multiple occasions. Therefore, as a matter of law, Fay Servicing, LLC is

liable to Plaintiff for violations of the FDCPA.

### B.  Defendants Fay Servicing and Wilmington Trust breached the Settlement and the Loan Modification Agreements

Defendants and Plaintiff executed the Settlement and the Modification and agreed to

be bound by their terms. The terms of the Settlement and Modification are unambiguous.

As provided in the Settlement, any breach of the Settlement would subject the breaching

party to a claim for attorney fees and costs as well as normal compensatory damages. The

Settlement provided that the Modification was effective starting February 1, 2019 and

that the Mortgage Loan would be updated to reflect the Modification. Defendants

accepted and cashed Plaintiff's February and March payments under the Settlement and

then subsequently repeatedly advised Plaintiff verbally and in writing that he was in

foreclosure.  Further, by rejecting Plaintiff's payments, denying him the ability to make

payments under the Modification, and failing to honor the Settlement agreement by

asserting false and misleading principal balances, Defendants relieved Plaintiff of his

duty of ongoing performance. Eighteen months after Defendants executed the Settlement

and twelve months after Plaintiff sued Defendants in this case, Defendants updated the

Mortgage Loan to reflect the most important term of the Modification and the Settlement

agreement, the agreed principal balance, by finally removing an improper deferred balance amount of $65,999 from their system. Defendants also violated the confidential nature of the First Suit Settlement by disclosing it to Plaintiff's ex-wife.   This was not reasonable nor a good faith attempt to perform under the agreements. As a matter of law, this Court should find that Defendants materially breached the Settlement and the Modification and that the nature and extent of the breach relieved Plaintiff of his obligations and duty to pay under the agreements.

### C.  Defendants Fay Servicing and Wilmington Trust acted in bad faith in relation to the Plaintiff's Mortgage Loan and Modification

The Plaintiff is a consumer, his Mortgage Loan is a consumer debt, and Defendant Fay Servicing, LLC is a mortgage servicer of that Mortgage Loan. The UTPA regulates Defendant Fay Servicing, LLC's conduct in the servicing and administration of Plaintiff's Mortgage Loan and its processing of his Modification and prevents it from taking certain actions and making certain misrepresentations as outlined at OAR 137-020-0805. In this case, Defendant misrepresented the status of the loan modification when it executed the Settlement and the Modification, but then proceeded to reject Plaintiff's payments under the Modification without justification. Defendant sent Plaintiff numerous mortgage statements that contradicted the terms of the Modification both before and after the filing of this lawsuit. Those statements to Plaintiff purported to assess him late fees, foreclosure and bankruptcy fees to which Defendants were not entitled and asserted a principal balance which was not due. Defendant willfully sent those statements, despite Plaintiff protesting various problems both before and after the filing of this suit. Therefore, there is no issue of material fact as to Defendant's violation of the UTPA and this Court should grant Summary Judgment on Plaintiff's UTPA claims.

### D.  Defendant Wilmington Trust breached the covenant of good faith and fair dealing under the Mortgage Loan contract

Every party to a contract has the right to expect reasonable and fair dealings from the other parties to a contract such that their deliberate actions do not frustrate performance of their mutual pact. In our case, Plaintiff and Defendant are in privity of contract for the Mortgage Loan. Defendant and Defendant's agents acting in the course and scope of their employment failed to take steps to reflect a mutually agreed modification to the Mortgage Loan and as a direct result frustrated and relieved Plaintiff's performance under the Mortgage Loan. Defendant then used its own frustration of purpose to assert the assessment of fees and charges against Plaintiff. Defendant and its agents subsequently made misrepresentations to third parties regarding the ongoing performance of the Mortgage Loan and that it accurately reflected the Modification, when it did not. Plaintiff is entitled to Summary Judgment as a matter of law as Defendant's actions breached their duty of good faith and fair dealing and frustrated Plaintiff's performance of the Mortgage Loan, in conjunction with the Settlement, and the Modification.

### E.  Defendants failed to raise a legitimate bona fide error defense

In this case, not only did Defendant Fay Servicing, LLC admit that it doesn't have policies or procedures in place for this specific type of scenario, but it also failed to implement the policies and procedures it did have in place for the onboarding and administration of loan modifications in general. Further, even after the error was brought to Defendants attention, it still failed to properly implement the Modification or otherwise undertake a detailed investigation and review of the loan modification onboarding, which is purportedly their policy. Defendant admitted that Plaintiff's case was a situation for which *they did not follow their own procedures. See* Ex. 1 Pg. 21-24.

Therefore, Defendant had no procedure or policy for Plaintiff's type of case, and they failed to follow their other purported procedures and policies for loan modification review, which might have led to a quicker resolution, especially after repeated notice of problems.

Plaintiff's case is similar to the situation in the *Isham v. Gurstel, Staloch & Chargo, P.A* case, where the underlying lack of basic procedures in data collection overshadowed the Defendant's structured policies to prevent collection violations. 738 F. Supp. 2d 986, 1000 (D. Ariz. 2010). There, the Plaintiff complained that the creditors internal routing system did not provide a procedure regarding the handling of mail and therefore all creditor policies about training and contact procedures were useless if mail was being lost that contained notification of attorney information. Here, the proper routing and escalation of communications was also an issue. Defendant has no procedures in place to receive or review communications from a borrower on a settled case or to accurately assure that a loan modification was properly in place. Plaintiff called Defendant multiple times prior to initiating contact through his attorney and Defendant never bothered to check the statements that were mailed out or otherwise note whether Plaintiff's account was current at the time of statement mailing. The situation persisted even after Defendant's attorney was notified by Plaintiff of multiple errors, Defendants fired an employee related to the failure to implement the Modification, Plaintiff's filing of this lawsuit, and after the exchange of detailed discovery. Therefore, Defendants cannot shift their burden on the bona fide error defense as a matter of law and they are liable to Plaintiff for damages.

**F.  The remainder of Defendants' affirmative defenses lack factual foundation**

The Defendants raised several additional affirmative defenses in their answers: 1) Failure to State a Claim; 2) Statute of Limitations; 3) Waiver, Estoppel or Laches; 4) Acquiescence or Ratification; 5) Unclean Hands; 6) Plaintiff contributed to or caused his own damages; and 7) Plaintiff breached the agreements first. When asked about these defenses during a deposition of Defendants' 30(b)(6) designee, the designee admitted that they do not have any facts or know any circumstances that would give rise to their defenses of 1) Statute of Limitations, 2) Waiver, Estoppel or Laches, 3) Acquiescence or Ratification, or 4) Unclean Hands. Therefore, Defendants have effectively waived those defenses.

The remaining defenses,1) Failure to State a Claim; 2) Plaintiff contributed to or caused his own damages; and 3) Plaintiff breached the agreements first, are not supported by the facts of this case. First, as outlined extensively above, Plaintiff has stated claims upon which relief can be granted. Second, a defense of contributory negligence is a damages question reserved for a jury and has limited impact on liability under the causes of action listed by Plaintiff. Third, the facts outlined above demonstrate that Plaintiff had performed the Modification and the Settlement agreements, and his performance was repudiated by written letter on multiple occasions.  The only assertion Defendant makes is that Plaintiff should have ignored Defendants rejection of payments, false and misleading mortgage statements, $65,999 increase in principle balance, and the overall failure to implement his Modification properly and instead continued to send payments. Unfortunately for their assertion, they admit that neither the Modification nor the Settlement terms included a deferred principal balance of $65,999 and that they sent monthly statements to Plaintiff indicating he owed that amount. The loan amount and

repayment terms are material elements of any loan contract and failure to properly adhere to them is a breach.  Therefore, Defendants assertion of their remaining affirmative defenses are not supported by facts or law and should be disregarded.

## V.  Conclusion

For the reasons stated above and because no material factual issues remain, this Court should grant Plaintiff's Motion for Summary Judgment by making findings that Defendants violated the terms of the Settlement and Modification, and that Fay Servicing, LLC violated the FDCPA and the UTPA.  As such, the Court should make findings and order that Plaintiff was relieved of his ongoing duty to perform under the Settlement as well as the Modification during the breach and he should be awarded attorney fees and costs.  Further, the case should be set for trial for a jury determination of the amount of damages as a result of Defendants' breach of contractual obligations and violation of statutory obligations.

DATED this __13__th day of January, 2021.

_____/s/ Theodore J. Piteo_____
Theodore J. Piteo, OSB# 090311
Michael D. O'Brien & Associates, P.C.
Of Attorneys for Plaintiff

//

//

//

//

//

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2021, I served the foregoing **PLAINTIFF MOTION FOR SUMMARY JUDGMENT and DECLARATION OF PITEO & STRICKLAND** on the following parties by email:

Plaintiff

I further certify that all other person(s) will be served electronically when the foregoing document is filed with the court.

_____/s/ Theodore J. Piteo_____
Theodore J. Piteo, OSB# 090311
Of Attorneys for Plaintiff